We'll call the last case in the morning, Waling Choizilme v. U.S. Attorney General. Mr. Bastien. I'm going to get organized. It's Choizilme. Choizilme. Thank you. Take your time. Good morning, your honors. Michael Bastien for the petitioner, Sui Chung at the table, also for the petitioner, Waling Choizilme. We're here seeking reversal of a BIA decision below, finding that an aggravated felony conviction barred Mr. Choizilme from all discretionary relief from deportation. Reversal also requires the court to reverse the BIA's precedent decision matter of LGH, which held that Florida statutes 893.13, the drug sale statute, was an aggravated felony. So my task, and I believe your job today, is to determine if the Florida drug sale statute is special. We can get to this determination in three short steps. First, the Mathis Supreme Court reminded us that the court says what it means, and the Supreme Court has said at least twice that the immigration aggravated felony of illicit trafficking is a generic crime. The Supreme Court has further repeatedly said, including this summer unanimously in Escobar-Quintana, that to determine the elements of a quote generic crime, the courts canvass the 50 states to determine the majority view of the elements of that crime. Third, applying federal law, model penal code, the laws of 49 states and the District of Columbia, a prosecution fails if the state cannot establish culpable mens rea beyond a reasonable doubt for commercial drug sale offenses. One state, Florida, is quote special, and that's a term of art used by Justice Thomas. Florida alone, in the entire U.S., presumes culpable mens rea regarding the illicit nature of the controlled substance. Because the Florida offense is dissonant with this generic offense, it cannot constitute an aggravated felony. As Justice Thomas wrote this summer, once the immigrant shows their statute of conviction is quote the generic majority norm, the inquiry ends. As he said, Chevron deference to the agency's interpretation is inappropriate. The inquiry simply ends. Florida is not just special, it is exceptional. For that reason, the court should indeed must grant this petition. And we believe the court must resolve this again at Chevron step one. I can move my critique to other issues. One is the board's decision in LGH, and then some comments regarding the government's arguments. I think you need to address our precedent in Spejo, and why we're not bound. It may well be the court needs to reconsider all this in bank, but just speaking for myself, it seems like we're bound by Spejo, and there are a couple of non-published decisions following it. Okay, with the court's indulgence, maybe I can comment on the lay of the land, because this is a big issue. So with Lopez v. Gonzalez, the Supreme Court acknowledged that there's two sides to the statute. There's drug trafficking crimes, which is code for an analog to a federal offense, and there's illicit trafficking. We're familiar. It's illicit trafficking, including drug trafficking crimes. We have under drug trafficking, the analogs of federal offense, and we've got on that. So that's subtle. Perfect. They traveled here under illicit trafficking, and saying that there's no mens rea there, and Spejo says that does qualify. Okay, this particular, it's the same statute. Just Jordan dissented there, whether it's right or wrong. I'm just, don't know why we're not bound by Spejo. Okay. That's what I need help with. That's fine, Judge Hall. Thank you. So on remand, of course, the LGH board acknowledged exactly what you said. There's two sides to this. When the Spajo appeal went up, the only issue they preserved was regarding the action element regarding the Florida statute, what they physically did. Yes, exactly. Whether they sold, delivered, manufactured, and the panel and Spajo found that, agreed that that was divisible, but the panel dealing, of course, actively with Judge Jordan said, I would agree with Judge Jordan that what I believe what is correct about his position was that in some ways the statute is indivisible, but let's parse it into the different elements. The action element is definitely divisible because this court has said so. The mens rea element is not divisible. Why? Because this court said so. It said so in Donova. Footnote two of Spajo acknowledges that the petitioner there didn't preserve and didn't raise this issue. In other words, flagging this issue to fight another day, and that's where we are now. We took the opposite course. We didn't contest the divisibility of the action element. We went all in on the mens rea is the distinguishing feature and what distinguishes the Florida statute from all other jurisdictions, and which therefore makes the statute categorically non-generic. These cases can coexist. I actually think Spajo is very helpful for other cases that address the modified categorical approach, and it will remain so. It just won't bear a direct import on this particular statute after and if the court agrees with our position that this mens rea element makes the division divisible. So to make sure I understand, you don't contest Spajo's holding that the actus reas portion of the statute is divisible or that your client was convicted of sale. I got the convictions, and you have a sale. Correct. Okay, and so you're saying illicit drug trafficking, the BIA's decision that illicit drug trafficking doesn't have a mens rea for purposes of the INA definition of aggravated felony, you're saying that's wrong? Precisely. Okay, because if we follow the BIA, that's what they say. Right. Right. Yeah, the BIA tries to draw a line so that illicitness, sorry, go ahead, I'm sorry. No, you go ahead. They try to draw a line so that illicitness and knowledge of illicitness has no bearing on the element of the crime. They say that's irrelevant. I mean, I think that fails on its face, because that leaves you with just sale, controlled substance. It also eliminates the need to look at what the majority of states are doing as the Supreme Court has instructed. Yes, without, I can't overstate our position that, this is what Escobar-Quintana said, this is what the Supreme Court said in Nijuan consistently, this court in Ramos, in other contexts, this is how you determine a generically defined offense in the INA. You take the term, and this is what the board has done, we included the sites in our reply brief, the Board of Immigration Appeals has done this in every other generically defined context, except for this one. So you canvass, the step one is canvassing the states, figuring out what the common perception is. And look at the case this summer at the Supreme Court, Escobar-Quintana. That was 35 states agreed on what the age of consent was. And Justice Thomas says, that's it. That's the majority. If your state is special compared to the majority, it doesn't trigger an immigration consequence. This one is extreme. We're at 1 to 49. Let me ask you this. I'm reading from LGH, and it says, because the Florida statute, and I quote, retains a mens rea requirement regarding the presence of a controlled substance, and includes an affirmative defense of ignorance of its unlawful nature, we do not consider it to be a strict liability statute. So I mean, your argument that there's just no mens rea, that isn't what the BIA said. But this court has said differently in Donova. So respectfully, LGH, it's a few years ago. And so at that point, the consensus and those challenging it was that this was like staples of the United States, one of these strict liability offenses that couldn't withstand constitutional scrutiny, and then it shouldn't trigger removability. Then this court in Donova really held it for what it is. They said, the fact that there is an available affirmative defense doesn't prove the element. Why? Because you're presumed to be guilty, and then the defendant has to raise the affirmative defense, prove it beyond a reasonable doubt in which they're presumed, you know, they're battling against a presumption. And so, again, this is the third time Judge Jordan has dealt with this. That time, Judge John Martin wrote for their panel that this shows that this element is simply missing. But Donova only dealt with the drug part of the statute. Donova said nothing about illicit trafficking. Right. It couldn't because the board hadn't reached that in the decision below. I don't know what to do about LGH, but Donova doesn't answer what is illicit trafficking. That's true. It says we don't answer anything about illicit trafficking. Okay. Okay, so let's now go to, you can see the statute's divisible, and we have a sale of drug here, okay? And so you're saying, tell me the case that, maybe it's a Florida case, that says when you're selling drugs, you don't have to know you're selling drugs. There's no mens rea for sale of drugs. That's precisely what the Florida Supreme Court says in Adkins. Okay, is that cited in your brief? Yes, it is. Okay. Because that dealt with the constitutional challenge at the time about this reversal. But also, the government brought up McFadden, and McFadden- Okay, and tell me, just so I can understand your line of reasoning, how do we know illicit trafficking generically is not like the Florida statute? What tells us, because I don't know of any trial called illicit trafficking. Right, but this is a- What are you, what is that? It's a generic offense, so therefore they have to find out, well, what would the states call this around the states? So similarly, in Ramos, this court had to figure out what is a theft offense. That could be a variety of things, a variety of jurisdictions. Okay, so what is illicit trafficking? What do we look to for the generic, so-called illicit trafficking offense? We look to drug sales statutes or drug trafficking statutes throughout the country. And as the Florida Supreme Court has acknowledged, we cited these in the briefs, multiple state Supreme Courts have all acknowledged that throughout the country, the generic norm is, with a couple of exceptions, there's two that relate to a reversal of presumption of mens rea in the possessory context. Florida is the only one that reverses the presumption in the higher felony or sale context. And so that's the norm. Certainly if you canvass, if we canvass the national standards, we wouldn't come to the, regardless of what we look at, we would never come to a national norm in which mens rea is presumed, regardless of what statutes we ever looked at. Florida is simply the only one. And I realize I'm out of, I'm over time, I don't know if there's any other questions now, otherwise I'll save time for rebuttal, but this is what Justice Thomas in the unanimous Supreme Court said. Well, but they're dealing with a different crime, okay. They're dealing with a different crime, it's rape of a minor, okay. And the framework he uses is the frameworks that's been there. Does he create any new framework in that case? Nor are we here. That's not what I asked, but he doesn't create any new framework in that case. He said regarding, it was a similar question. They said, what's a minor for the purposes of this? Yeah, I just don't know how I write around Spaho. So will you say I look at footnote two and I write around it because of footnote two? That case was only about one of the elements. Our case is only about a different element. Our element, Florida is silent. Every other jurisdiction has one that the state has to prove. Our clients are presumed half guilty in Florida. That's different than every other jurisdiction. Your point on that issue is that some elements of the statute post Spaho are divisible. Some are not. Yes. And mens rea is one that is not. So you've got to look at the generic definition of the offense. Thank you. You're much more succinct than me. If there's no further questions, I'll save my time for rebuttal. Yes. Thank you. You may proceed. May it please the court. I'm Christina Greer on behalf of the United States Attorney General. Your honors, this case is simple. The issue here is whether the board's interpretation of the undefined term illicit trafficking in the aggravated felony statute is based on a reasonable construction of the statute. As the Supreme Court stated in Lopez, illicit trafficking is not defined. And therefore, under Chevron, the court should defer to the board's reasonable interpretation of that term as set forth in matter of LGH. The question here isn't how exactly the board came to its conclusion. It's whether it came to that conclusion reasonably. Well, what conclusion did it come to? Let's start with that. It came to the conclusion that in this case where you have a statute where the mens rea, where knowledge of the presence of the substance must be shown, even a statute where knowledge of the illicit nature of the substance does not have to, or is not required, that statute satisfies the illicit trafficking definition. And why? Because it's, there were actually, or the board looked at four different, or had four different reasonings. First off, it looked to the term illicit trafficking and said illicit means unlawful. It does not prescribe a certain mens rea requirement. Second, Congress's language, illicit trafficking is broader than that of drug trafficking crime. And in the Immigration Act of 1990, Congress intended to expand the removal of those with drug convictions. And so this term illicit trafficking is intended to be a little broader. Now, that was based on an understanding of Donahua that may have been changed now that, or since the Supreme Court's subsequent decision in McFadden. But also, third, Congress did not give a specific mens rea requirement for illicit trafficking, and the board had no reason to believe that Congress intended to impose a specific knowledge requirement and thus exclude a state drug trafficking crime from the aggravated felony definition solely because it does not require knowledge of the illicit nature of the substance. And that's important to note here. Aren't you supposed to look at, for a generic offense like this one, what the majority of states and jurisdictions are doing? I have never seen a case stating that that is what the board must do. Well, who must do it? Only federal courts, but not the board? In Esquivel-Quintana, the question was whether the statute was ambiguous, or Supreme Court in Esquivel-Quintana did not look to Chevron. Because it refused to give Chevron deference, right? We're in the same situation here. The BIA issues a ruling, and the question is whether or not you're going to give that ruling Chevron deference. So why don't we use the same framework as Esquivel-Quintana? In Esquivel-Quintana, the Supreme Court didn't state whether it was at step one or step two of Chevron. Forget what steps you're at. Why don't we use the framework of that case? And the framework involves looking at what the majority of jurisdictions do with a certain undefined offense or term. Is that not correct? As I stated, I have not seen that as a requirement for an agency when interpreting it. That's what the Supreme Court did in Esquivel-Quintana. Is that not correct? Yes, it is. And in doing so, it refused to give Chevron deference to the BIA. Did it not? It did not explicitly state whether it would or not. It seemed to be at step one, finding the statute not ambiguous. And here we know that the statute... But not ambiguous because the court did what to resolve the statutory definition? The court did look to the, I believe, Black's Law Dictionary's definition of the term minor, and also did canvass the states. Why don't we do the same thing here? Because the statute is ambiguous. And so it should be the board or that... Why is it ambiguous? The Supreme Court in Lopez acknowledged that the term illicit trafficking is not defined anywhere in statute. But the lack of definition, we've said many times, doesn't necessarily mean ambiguity. We have a lot of undefined terms that are not ambiguous. Why is this term ambiguous? It's ambiguous because there's also no... As Judge Hull mentioned earlier, there's no crime known as illicit trafficking. There's no generic crime we can look at. We're interpreting a phrase, illicit trafficking, that's not defined anywhere in statute that I know of. And so that first step of Chevron is satisfied. This statute is ambiguous. And so the board... The question is whether the board's... What does trafficking mean to you? Trafficking... I believe that a matter of LGH, which I do not have in front of me, states that trafficking is an exchange. It's sometimes... An exchange? So if I give Judge Hull a pen, I've trafficked in pens? No, it's a commercial exchange. So the... So if I sell Judge Hull a pen, I'm trafficked in pens? That is how the Supreme Court suggested it is... Illicit trafficking is in... I'm not at the word illicit. I'm at the word trafficking. So I want to know what you think trafficking means. Commercial dealing. That is what the Supreme Court has stated. So this is now... So now we have unlawful commercial dealing is what you think the statute means. Yes, that is what the board stated. Is that ambiguous? It is, at least as to mens rea. There's no... Why? If it's unlawful, what makes it unlawful? If I sell a pen to Judge Hull and someone accuses me of illegally trafficking, illicitly trafficking in pens, what do they have to show to prove that I've done something wrong? That would... I've trafficked, right? According to your definition, I've trafficked in pens by selling them to her. Yes. What do they have to show to prove that I've illicitly trafficked in pens? That the object of the trafficking is contraband, which here the object of the trafficking was cocaine. And... So if I sell her a pen that happened to be... That happened to belong to somebody else and I've appropriated it, I've engaged in illicit trafficking, despite my knowledge of the stolen nature of the pen. Because it's contraband, right? Even if I don't know it's contraband, I'm engaged in illicit trafficking of the pen, right? Yes, but generally in our law, knowledge of the illegality of your actions is not required. And... No. When it comes to drug use, drug trafficking, knowledge of the substance is overwhelmingly required. Florida doesn't require it, but almost every other jurisdiction does. Knowledge of... If someone gives me a bag and tells me to take the bag to my cousin in Hialeah, a suburb here, and I do that, and I have no idea what the bag contains, and it turns out that the bag contained drugs, have I trafficked in Florida? Not according to this court's precedent. In Shelton, this court held that, or this court recognized that under Florida law, in State v. Adkins, there still is a requirement that you know of the presence of the substance. So the question here isn't, is this cocaine? It's, do I know that cocaine is illicit? That is what's not required. No, no, no, no, no, no. That's not how Florida law works. You think Florida law requires the state of Florida to prove knowledge of an illicit substance? Knowledge that the controlled substance is... present. What's the affirmative defense then? The affirmative defense is, I did not know that that drug was illegal, or was illicit. What part of the case says knowledge of the presence of the controlled substance is required? State v. Adkins. And then this court in... That you have, that the state has to prove mens rea, that you knew that you were transferring a bag full of cocaine? Yes. That's what you think Florida law means? Yes, and that's what the Supreme, the Florida Supreme Court's jury instructions state, that knowledge must be proven also. Knowledge of what? Of the presence of the substance. Do I have to know that there's a white substance there, or I have to know that white substance is cocaine? From everything that I've seen, including the jury instructions, it says knowledge of the controlled sub... knowledge of the presence of the controlled substance. And that's actually consistent with... Petitioner argues that this statute is an outlier, but under that understanding, it's not. For example, in McFadden, in 2015, the Supreme Court held that even the CSA, the Controlled Substances Act, for conviction under that statute, knowledge may be met by two different methods. One of those methods is to show that the individual knew that he possessed the substance, or by showing that the person knew the substance was illicit. Either way can satisfy the CSA, which even calls Donawa into question. And this brings... So, but what's important... I'm obviously going to have to look at Florida law, because I'm now totally confused. So, I see the site to Atkins, 2012. Yes. So, in terms of what Florida requires, what other cases do I... Shelton. It's also mentioned in the government's brief. It should be in the table of authorities. And what is the Florida jury instruction number, or where do I find that? I don't have the number with me, but it is on the Florida Supreme Court's website. I just Googled the Florida jury instructions. Is it talked about like in Atkins or Shelton, or anything like that? No, it's not. However, in Shelton, this court did set forth the two elements that the individual there was convicted of, and interpreted the statute as requiring knowledge of the presence of the substance. And that was in the context of delivery. And for a person whose act was in 2005, now the decision was in 2012, but the act being discussed was in 2005. Your basic position is we should give Chevron deference to the BIA's decision. Yes, Your Honor. What about counsel's point that Florida is an outlier in terms of generic illicit traffic? Petitioner argues that Florida is an outlier. However, that petitioner did not canvas the states. Petitioner points to two citations in State v. Atkins to a 2002 Washington State case and another 1988 case saying that they canvassed statutes and found that Florida and Washington were outliers. But that doesn't necessarily hold today. For example, those canvases didn't pick up the Arkansas statute. The only three statutes at issue here are apparently, or the only three statutes discussed in the briefing are outliers, according to petitioner. And that is the CSA, where according to McFadden, it can be satisfied by showing only knowledge of the presence of the substance without knowledge of the illicit nature of it. Or Arkansas, which only requires a reckless mens rea and not knowledge. And Florida, which does not require knowledge of the illicit nature of the substance. You're saying that under Florida law, you have to know, the state has to prove that you knew you had cocaine and the only thing you get to rebut through an affirmative defense is that although you knew you had cocaine, you didn't know that cocaine was illicit? Yes. That's your understanding of Florida law? It is. It may not come into, I mean, there's. I mean, what case upholds a conviction under though? I mean, defense lawyers in Florida would love to be able to take that snippet of your answer and take it to all the judges they practiced before and tell them that's the law in Florida. But people in Florida aren't getting that sort of an instruction. They're getting a presumption that if you possessed or trafficked in something that happened to be cocaine, you knew that it was cocaine. And then you have to prove that you didn't know that it was cocaine. You thought it was talcum powder. Okay, that is. I mean, what case after Atkins? Do you have any cases after Atkins that go either way on how this statute is interpreted? I don't have a specific case on that point. I did look for some, but I did not find any. Wasn't the whole challenge in Atkins that it's unconstitutional? The challenge failed, of course, but wasn't the whole challenge that it's unconstitutional to presume that you knew that something in your possession constituted illegal drugs? Yes. But it also states that you have knowledge of the presence of the controlled substance. Of the substance or the controlled substance? The controlled substance. So the government, the state has to, I don't want to belabor the point, but you think that the state has to prove if I deliver that bag to the person in Hialeah, the state has to prove that I knew that the bag contained cocaine to get a conviction before I even have to come up with an affirmative defense of lack of knowledge? That is my understanding. Okay. Thank you very much. You're saying there's some mens rea, but maybe not as strong as some other states? Yes. Is that what you're saying? There is some mens rea. There is. That is even under the BIA's interpretation. Yes. There's some mens rea, knowledge of the presence of the controlled substance, but not knowledge that the controlled substance is illicit? Yes. And that's also made clearer looking at McFadden, which petitioners also mention in his reply brief. Where is McFadden from? I'm sorry, I'm behind on that. Oh, it's a Supreme Court case from 2015 interpreting what the prosecutor- Florida or U.S.? It's U.S. Supreme Court. Okay. Interpreting what the knowledge requirement for the Controlled Substance Act. And there, in a unanimous decision, the Supreme Court held that the knowledge requirement for the CSA can be met in two ways. One is by showing knowledge of the presence of the controlled substance, as in, I know I have cocaine. Or through showing knowledge of the illicit nature of the substance, but it does not require both. And the first method of knowledge is analogous to our understanding of the Florida statute. All right, so when you say knowledge of the presence of the controlled substance, that is knowledge of the presence of cocaine. Yes. So you'd have to know what it is, is cocaine or marijuana or whatever it is. That's my understanding. Whatever the article is, you'd have to know that it is. Then you go to see whether it could be some other substance that's not really a prohibited substance. So you would argue then that the affirmative defense is to say that you were so ignorant about the laws in the United States that you thought that cocaine was okay? That has come up. Or that marijuana was okay? Or that methamphetamine was okay? And it generally is not an issue with those drugs. The drugs where that becomes an issue are synthetic drugs or drugs that, for example, the CSA case I'm talking about, McFadden came up in the analog context. But Florida doesn't have all of those identical parallels. No, but it does have substances on the list that people don't know or elicit. One case discussed in our brief is about an individual who had Phenermine but didn't know it was a controlled substance. Or that it was something you needed a prescription for. And so was convicted under a statute in Washington for having it. She knew it was Phenermine, but she did not know it was illicit or that it was unlawful. And that's similar to our understanding of the Florida statute. There are no additional questions. Thank you. Thank you. Respectfully, judges, I've got a few clarifications. Initially, regarding the Florida offense. This is in the Florida statutes. It is the jury instruction. This is 893.101 statute. It says, the legislature finds that knowledge of the illicit nature of a controlled substance is not an element of any offense under this chapter. Lack of knowledge of the illicit nature is an affirmative defense to the offenses of this chapter. It is unambiguous what the state of the law is in Florida. That was discussed from the perspective of constitutionality in Adkins. I just want to be really square on that. Can I ask you this? Does the government have to show as an element of the Florida offense that the drug was cocaine? Did they have to show the nature of the controlled substance? But the nature of it is presumed. That's what distinguishes the Florida from all the others is regardless of what the name of a drug is that may be listed in a charge, it's the knowledge of its illicitness. I understand you don't have to prove that you know it's illicit. That is, you don't have to prove it's forbidden by the law. But do you, let's say it's drug A, and that drug A is a controlled substance, okay? Do you have to prove no, the presence of A? Yeah, I think it's named because the specific statute involves, in this case, involves cocaine, I believe. Okay, let me go back because I agree with you. You don't have to do knowledge of the illicit nature, i.e. that is unlawful to have that drug. Okay, most times you're going to know that. But do you still have to prove you knew that you had cocaine in your possession if you're going to be charged with cocaine? No, you have to be proven that you have the substance and then the actual, you know, manta raya of it is, of what it was or what its nature was is presumed. This is why I'm going back to... You and the government have very different views about how Florida law operates now. Yes, I would agree that. I think that their explanation of Adkins was, I disagree with it. I think the, similarly, I think the, you know, this court's position on what is actually required, you know, typically, I think you answered this in, again, in Ottawa referenced an older case called Gordon that still was after, in this relevant time period, that says the federal example you must establish without exception and beyond a reasonable doubt that the defendant had knowledge of the nature of the substance in his possession. And that's really where we are in McFadden, which reiterates this. I don't think McFadden helps the government at all. Okay, what we're trying to find out is that to be convicted of cocaine, a possession of cocaine or selling cocaine, do I have to know that powder I'm giving is cocaine? No, because you don't have to know that it's illicit nature. It's just, I know I don't have to know it's illicit. I got that part. But do I have to know what the substance is? No. Okay, so I can transfer talcum and know it's talcum and I can't be convicted or I can be convicted. You can't be because you have to disprove. No, you can't be because the government has to prove that what you ultimately transferred was cocaine. But she can't be convicted because she only transferred talcum powder. If she believed that she had talcum powder, but she really had cocaine, she can be convicted, right? If she only transferred talcum powder, she can't be convicted because then there was no traffic in any controlled substance, right? Right. And that's perhaps where we're talking past each other is there's what actually transpired, you know, as we say, Jack and Jill went up the hill on those sorts of facts as opposed to what's actually necessary for a conviction in which in Florida, you know, explicitly, and there's one thing LGH got right, is Florida made it as easy as possible to convict people of these drug offenses. And as LGH also acknowledged, that just means a lot of them are going to, that means they're going to escape aggravated felony treatment. Florida went out on a limb. It's, you know, this is a political issue. Florida wants to have easy prosecutions on this and not have to presume a guilty mens rea, which I guess otherwise the jury would have to determine based on the circumstances, whether they understood the illicit nature of the offense. Do you agree there's mens rea of different kinds and that we're talking about two different mens rea here? I mean, there's mens rea, I know it's cocaine and I know cocaine is forbidden by the law. That's one type of mens rea. Okay. Okay. And then there's mens rea, I know I have cocaine. Correct. And do you even have to prove the latter under Florida law? I know I have cocaine. No, I think they have to prove it has to be cocaine and beyond that, it's a presumption that then the defendant has the uphill battle. This is why literally if you have sale and it is a controlled substance, you're guilty. It's a presumption that you had the mens rea then? Yes, 100%. It's in the statute. There's some mens rea, but if they prove it's cocaine, that's evidence of your mens rea. There is no mens rea regarding the illicit nature. They don't have to prove any of that. I'm trying to get to whether I have to even know it's cocaine. I have to know it's cocaine. First of all, the government can prove it's cocaine and that raises a presumption that I knew it was cocaine. Is that how it works? I guess if it was cocaine and I delivered it, then I am guilty of the crime. That's the end of the inquiry. Unless you prove the affirmative defense. Right, unless I waive my Fifth Amendment rights and take the stand and prove my own mental state beyond a reasonable doubt in a pitched battle in which I am presumed to have mens rea and I must overcome that. And this is why Donawa came down the way it did. So going back to your earlier question, I don't think the case that you've got to trouble yourself with distinguishing is FAHO. The case that you would have trouble yourself distinguishing would be Donawa and also Sanders, in which you've already gone down this road and understood the distinctions and what's required under every other prosecution. Donawa says we don't address illicit trafficking in the statute. But it addresses the question that's so troubling to you, Judge, which is how does the mens rea requirement work in Florida law? Because when it got to you in Shelton, it was a different battle and the court had to give epidefference to the state's construction of its own constitutionality. It was a different fight. But if you look at Atkins, you understand how the statute works. Again, if you canvass the 50 states, you'll see no matter how complicated this discussion is that we're having, no other state has it regarding their statutes. And I know I'm running out of time, but the government keeps referring to an Arkansas statute. That's, we've addressed this in our brief. It's totally not on point. Most states, all other states that don't explicitly have a mens re that must be proven in the statute are like Arkansas, where via case law, via jurisprudence, one is read in and it must be proven. That was in their brief. I can tell you the case name for that. It was Diaz-Larazola. I mean, that case supports us. Yeah, I've let you run over, but let's see if the panel has questions. Thank you for your help with the case. Okay, thank you very much, judges.  The case is submitted and we're in recess.